## KELLY v. RENFRO.

1. In an action for the breach of a marriage promise, it is a full defence, when the defendant has *bona fide* offered to marry the plaintiff, although the defendant's conduct, previous to the offer, had been such as would justify the plaintiff in terminating the engagement, but she had not signified her intention to terminate it.
2. Such an offer made after suit brought, may be given in evidence to mitigate damages.
3. When the defendant, upon the day fixed for the marriage, wrote to the plaintiff's father, desiring him to inform her of the defendant's determination to postpone the marriage, at least for the present, her assent to the proposal cannot be inferred from her silence, or from her omission to respond to the note.

Error to the Circuit Court of Macon.

Assumpsit by Miss Renfro against Kelly, for the breach of a marriage contract.

At the trial upon the general issue, and other pleas not necessary to be stated, it was shown in evidence, that the plaintiff and defendant had mutually promised to marry; that the 2d of May, 1843, was fixed on for the marriage, preparation made, and guests invited. It was also in evidence, that the plaintiff was a minor, and resided with her parents; that her parents had been much opposed to the marriage, and the prime cause of their opposition, or that which induced their opposition, still existed. The evidence also conduced to show, that the plaintiff's friends had assented to the marriage, and made preparation for it; that the defendant resided about half a mile from the residence of the plaintiff's parents, and on the day fixed for the marriage, he went to the court house, about eleven miles distant, procured a marriage license, and requested the attendance of a parson to perform the marriage ceremony; that when the parson arrived at the house of the defendant, the latter was properly dressed for the occasion, but seemed much confused, perplexed and exceedingly embarrassed; he expressed himself greatly disturb-

ed, asked the parson's advice as to the course which should
be pursued by him, was advised to write a note to the fami-
ly, and a note in the terms following was sent to the father
of the plaintiff, by a slave, and no person was present on the
part of the defendant when it was read to the plaintiff. The
note runs thus: "Nathan Renfro, Esq.—Dear Sir—After
maturely reflecting upon altering my situation and marrying
your daughter, I have concluded it will be better for us both
to postpone, at least for the present. You will be so good
as to inform her. In so doing you will oblige your humble
servant,                                    REUBEN KELLY.

    May 2d, 1843."

No answer was returned to this note. On the examina-
tion of the plaintiff's father as a witness, the defendant pro-
posed to show, in mitigation of damages, that he, soon after
the day set for the marriage, proposed a performance of the
contract. The plaintiff objected to this, and the court sus-
tained the objection.

The defendant also proposed to show, by the same wit-
ness, what contract was entered into, in getting counsel to
bring this suit, the witness having stated he had spoken to
counsel on the subject of the suit, but had employed no one.
This was overruled by the court.

The defendant then proposed to show, by the same wit-
ness, conversations at different times after the 2d of May, be-
tween the witness and the defendant, and proposals commu-
nicated to his daughter, and her answers thereto, on the sub-
ject of marriage. This was likewise overruled by the court.

The plaintiff then gave evidence to show the standing and
property of the defendant. This was objected to, and the
objection overruled.

The defendant then offered to prove, in mitigation of dam-
ages, that subsequent to the commencement of this suit, he
had again and again proposed to consummate the marriage
with the plaintiff. This was also overruled.

The court was requested by the defendant to charge the
jury, that if they believed he proposed to the plaintiff on the
night of the 2d of May, either a postponement, or a rescis-
sion of the contract, her assent to the proposition might as
well be inferred from her silence at the time the proprosition

Kelly v. Renfro.

tion was made known to her, as from declarations made by her. This was refused.

The defendant excepted to the ruling of the court in these several matters, and they are here assigned as error.

COCKE, with whom was J. A. CAMPBELL, for the plaintiff in error, argued—

1. That the offer of the defendant to marry the plaintiff, although made after the day first fixed for the marriage, was proper to go to the jury, either as a full defence to the action, or in mitigation of damages. In actions like this, there can be no damages which the law will compensate, when the party has the opportunity offered to conclude the contract. It is unreasonable to say, that such engagements must be performed on a day certain. Many circumstances may happen after the time is agreed on, which require the ceremony to be postponed, and the single question between the parties under such circumstances, is, whether the request for postponement is made in good faith. [Southard v. Rexford, 6 Cowen, 252; Story on Con. 52-3; 7 Wend. 142; 1 John. C. 116; Chitty on Con. 156 to 160; 7 Cowen. 22.]

2. A *bona fide* offer to perform the marriage engagement, although made after suit brought, it is conceived is proper to mitigate the damages, because the party then has the option to receive all the benefits for the deprivation of which she sues; and it seems against public morals to countenance actions of this description, unless the feelings of the female have been trifled with, or her character injured. [Baddely v. Matlock, 1 Holt, 151,]

3. The charge asked for should have been given. The request which the defendant made to postpone the marriage, was such as the plaintiff might have assented to, and this assent might have been inferred from her silence. The question is not, whether the jury *would* so have inferred, but whether the evidence was such as would permit them to do so.

J. E. BELSER, contra, insisted—

1. The breach of the contract being shown, a subsequent offer to perform it is no defence to the action; nor is it good

in mitigation of damages. [Chitty on Contracts, 158; 6 Cowen, 254.]

2. The only answer to the action is, the bad character of the plaintiff, or that she had acted criminally previous to the contract, and that this was unknown to the defendant. [1 Holt's N. P. 151; 3 Es. 236; 4 Ib. 267; 3 Mass. 189; 7 Cowen, 22; 7 Wend 142; 2 Root, 354.]

GOLDTHWAITE, J.—1. The contract of marriage is so delicate in its nature, as to render impracticable any attempt to govern it by the same arbitrary rules which obtain with regard to other agreements. Even where there is a mutual engagement, and the day is set for concluding the marriage, it is evident circumstances may occur to make it entirely improper to proceed, or render it expedient to delay, the consummation, if not to terminate the engagement. It cannot then be permitted to either party to a contract of this description to say, the omission to marry upon a particular day is a breach of the engagement. It necessarily continues in force until the one or the other of the parties, by conduct, or by words, evinces that he or she is unwilling to proceed to the ordinary result. When this takes place, and not until then, does any right of action accrue to either party. We say either party, because by strict rule, the action is common to either sex, though in our own country, a just regard to public morals, has long since confined the action alone to the female sufferer. It is said to be necessary to alledge in the declaration, a refusal to perform the contract, (Willard v. Stone, 7 Cowen, 22;) but this refusal is usually, and may always be, inferred from the acts or declarations of the party. In the present case, it cannot be doubted, the lady was entirely warranted in considering the engagement as terminated so soon as the note of her suitor was communicated to her; but until she manifested her intention to consider it in that light, it cannot be construed into a refusal to marry. In our judgment, if the defendant afterwards, in good faith, proposed to proceed to consummate the contract with her, in a reasonable time, he can in no sense be said to have refused to marry the plaintiff. We do not wish to be understood as asserting the law will tolerate that a man may trifle with the

affections and feelings of a virtuous female, and afterwards avoid the consequences of his inhumanity by a simulated offer to marry; but if the offer is made *bona fide,* and before the female has signified her determination to end the matter, such an offer is a full defence to a suit for a breach of the contract. This seems to be the result of the decision in Southard v. Rexford, 6 Cowen, 254.

2. But if the facts before the jury, in the present case, would have warranted the jury in pronouncing, that the lady considered the engagement as terminated, after the note sent to her father was communicated to her, and this was made known to the defendant, we think, notwithstanding that the subsequent offers, after the suit was commenced, to marry her, were proper evidence in mitigation of damages. The foundation of this action, is the loss of the benefit which the injured party might have derived from the union, if that had taken place, as well as compensation to her wounded feelings and character; and if the other party has honestly offered her all the advantages of his wealth and station in the proposal to make her his wife, we can perceive no reason why the jury could not consider it in mitigation of damages, especially as by this offer, he has done much to relieve her character, if that was impaired by his conduct, and has salved at least her wounded pride. In *Baddely v. Matlock,* 1 Holt, 151, the refusal to proceed with a marriage, because the party was accused by rumor of some misconduct, was considered proper in mitigation of damages; and certainly it is much stronger to show that the party has been offered all that she seeks compensation for.

From what we have said, it results that the court below erred, both in excluding the offers to marry before the commencement of the suit, as well as those made after.

3. It is scarcely necessary to add, that the charge requested was properly refused. No virtuous female could be ex-expected to respond directly to the note which the defendant communicated to the plaintiff's father, and no other inference ought to be drawn from her silence, than that the engagement was terminated, not merely postponed, by this act of the defendant, independent of any assent on her part.

Judgment reversed and remanded.