Holloway v. Griffith.

---

## HOLLOWAY v. GRIFFITH.

1. **Marriage: BREACH OF CONTRACT: PLEADING AND EVIDENCE.** Where, in an action to recover damages for the renunciation of a marriage contract, the pleading laid the breach as on the 11th of November, it was *held*, that evidence that it occurred on the 15th of said month was sufficient to support the verdict.

2. —— **EFFECT OF RENUNCIATION BEFORE TIME FIXED.** A contract to marry at a certain time may be treated as broken by the declaration or renunciation of the opposite party before the time fixed upon has elapsed, and the plaintiff entitled to maintain an action as for a breach of the contract forthwith.

3. —— **PECUNIARY CIRCUMSTANCES OF DEFENDANT.** While in such an action the question whether the defendant will, in view of his pecuniary circumstances, be able to pay the damages awarded, should have no influence with the jury in estimating their verdict, they may, nevertheless, properly consider the pecuniary as well as the social standing of the defendant, as tending to show the condition in life which the plaintiff would have secured by a consummation of the marriage contract.

4. —— **SUBSEQUENT OFFER TO PERFORM.** An offer on the part of the defendant to fulfill the marriage contract after a refusal, or a continuance of the offer in open court upon the trial, on condition that plaintiff would dismiss the suit, should not be regarded by the jury either as a defense or in mitigation of damages.

5. **Evidence: INTEREST.** The feeling or interest manifested by a witness should be considered by the jury as affecting his credibility, and for no other purpose.

*Appeal from Wapello Circuit Court.*

SATURDAY, OCTOBER 7.

ACTION to recover damages for an alleged renunciation of a promise of marriage. Jury trial. Verdict and judg-

| | |
|---|---|
| 32 | 409 |
| 93 | 763 |
| 32 | 409 |
| 108 | 64 |
| 32 | 409 |
| 113 | 343 |
| 32 | 409 |
| 118 | 592 |
| 32 | 409 |
| 129 | 189 |
| 32 | 409 |
| 143 | 529 |

ment for plaintiff. Defendant appeals. The material facts are stated in the opinion.

*Jacques & Fawcett* for the appellant.

*E. L. Burton* for the appellee.

MILLER, J. — I. The first point urged by appellant in argument is, that "the verdict was unwarranted by the evidence." The answer admits the contract of marriage averred in the petition, but avers that, by the agreement of the parties, the time for the consummation of the marriage had been postponed until the spring of 1871. The petition alleges that it was agreed between them that the marriage should be solemnized during the latter part of November or December, 1870, and that defendant, about the 11th day of November, 1870, informed plaintiff that he was going to dispose of his property and leave the State, and go to some of the southern States, and did not want to perform his marriage contract, and would not do so ; and that, against the consent of plaintiff, defendant at that time peremptorily refused to marry her as he had agreed. Upon the issue thus made, whether the defendant had renounced the contract and refused to marry the plaintiff as averred in the petition, or whether the time for the consummation of the marriage had been postponed as stated in the answer, the evidence was conflicting. The jury have decided the issue (and, as we think, according to the preponderance of the evidence), and we will not disturb the verdict on this ground.

II. The next point made is, that the verdict is contrary to law. It is argued that the evidence and pleadings show
1. MARRIAGE: that the marriage was to have been solem-
breach of con-
tract: pleading nized the latter part of November, or in De-
and evidence. cember, 1870 ; that the breach of the contract
is laid in the petition on the eleventh of November; that

the evidence shows the breach, if any, to have occurred on the fifteenth of November; that, under the instruction of the court to the effect, that, if the marriage was to have been solemnized during the latter part of November or in the month of December, then it might have been broken *at any time during such period*, but not before, the verdict is contrary to law as stated by the court.

The averment of the petition is, that *about* the 11th day of November, 1870, defendant renounced his agreement to marry plaintiff. Evidence, therefore, that such renunciation occurred on the fifteenth of the month, or even later, would support a verdict under the averment. And, in the view of the case which follows, the verdict would not be against the law, though it was averred positively that the renunciation or breach occurred *on* the eleventh of the month, instead of *about* that time.

III. Appellant assigns as error the refusal of the court to give the instruction asked by him, and the giving of the fifth paragraph of the charge of the court. The instruction refused is as follows: "If one bound to perform a future act, before the time fixed for doing it, declares his intention not to do it, this is no breach of his contract; but if the declaration be not withdrawn before the time fixed, or if the party distinctly incapacitate himself before-hand from the performance of the contract, then there is a breach of the same."

2. —— effect of renunciation before time fixed.

The paragraph of the charge complained of was in substance that, if the contract was to be performed in the latter part of November or in December, and that no particular *day* was fixed for the solemnization of the marriage, then, as it might have been performed at any time during such time, so it might also be broken at any time during such period, and that plaintiff was not bound to wait until the whole time had elapsed before bringing her action.

The question made and argued by counsel for appellant,

upon the ruling of the court in giving ·and refusing these instructions, is, "whether or not a *contract to marry* at a certain time can be *broken* by the declaration or renunciation of a party before the time fixed upon has elapsed, so as to entitle the other party to maintain an action for a breach of such contract forthwith?"

Strictly and technically speaking there can be no breach of contract until the time for performance has arrived, and yet this court has recognized it as "a well-settled rule of law, that, if before the time of performing the contract arrives the promisor expressly renounces the contract, the promisee may treat this *as* a breach of said contract, and may at once maintain an action in respect thereof." *Crabtree* v. *Meessersmith*, 19 Iowa, 179, and cases cited.

Appellant's counsel have called our attention to the case of *Frost* v. *King*, recently decided in the court of exchequer, England, in which it is held that, where the defendant had promised the plaintiff to marry her on his father's death, and before that event happened he renounced the contract, the plaintiff could not treat this *renunciation* as a *breach* of the contract, and at once maintain an action in respect thereof.

This case cited and relied on by counsel would seem to be in conflict with the decision in *Crabtree* v. *Meessersmith*, *supra*, and yet the conflict is more apparent than real, for the learned judge in the opinion in *Frost* v. *King*, after an elaborate argument to show that there can be no technical *breach* of a contract prior to the time for performance, and especially in contracts to marry, says: "It seems to me, therefore, upon the whole, that we cannot sustain this verdict without falling into the error of mistaking the *renunciation* for the *breach* of the contract.

But I think we may hold that ·the defendant, by renouncing the contract, has entitled the plaintiff to elect whether she will accept the renunciation, thus putting an end to the contract, and bring a special action on the case

Holloway v. Griffith.

for the wrong done by the act of renouncing,    *    *    *
or insist upon the contract and await the death of the
father," etc.  It seems, then, that, after all, this case
was decided on a technical question of pleading.  The
declaration was for a *breach* of the contract of mar-
riage.    There being no technical breach, it was held
that proof of a *renunciation* would not support the
declaration for a breach of the contract, but that a special
action on the case, for the wrong done by the act of re-
nouncing the contract before the time for performance had
arrived, was at once maintainable.    The case, then, is
authority in support of the maintenance of the action in
this case.  The petition sets out the special facts, viz., the
contract and engagement of marriage between the parties,
the time when it was to have been performed, the renun-
ciation of defendant, the declaration that he would not
perform his contract, etc., *substantially*, as would be neces-
sary in a declaration in a special action on the case "for
the wrong done by the act of renouncing," under the com-
mon-law system.    Our system of pleading ignores all
fictions and technical forms of actions and pleadings.  The
facts constituting the plaintiff's cause of action, stated con-
cisely and in ordinary language, is all that is required.
Rev., §§ 2872, 2875; *Leas, Marsh & Sinclair* v. *White*,
15 Iowa, 187.   "If a right is sought to be enforced or pro-
tected, or a wrong redressed or prevented, but one 'form'
is given, and that is styled a 'civil action.'"   *Conyngham*
v. *Smith*, 16 Iowa, 471.  And the facts only are required
to be stated.  If these constitute a cause of action, the
statement is sufficient.  The facts averred in the petition
show a renunciation by the defendant of his contract to
marry plaintiff, rather than a *breach* of such contract, so
that, upon the theory of *Frost* v. *King*, the action is
maintainable.

The rule announced in *Crabtree* v. *Meessersmith*, *supra*,

we deem sound and just, and too well settled to be now called in question.

It is not, that, if before the time for performing the contract arrives, the promisor *expressly renounces* the contract, that this constitutes *a breach* of the contract, but that in case of such renunciation by the promisor the promisee *may treat this as a breach*, and may at once maintain an action in respect thereof. Not that such renunciation, prior to the time for performance, *is a technical breach*, but that the party injured may so treat it and bring his action at once for the injury. The rule is founded upon correct principles of justice.

Taking the case before us for an illustration, if the plaintiff could not have brought her action until the full time, in which the contract was to be performed, had elapsed, the defendant might have disposed of his property, and left the State, and, as the evidence tends to show, he had intended to do. An action brought after he should thus leave the State would afford the injured party no remedy. To require her to thus wait would be a mockery of justice.

Again, it is urged by appellant that, inasmuch as contracts to marry are subject to many vicissitudes, the estimation of damages becomes difficult if an action is allowed to be maintained prior to the time for performance; that the man who is to-day of good name and social position, and of ample fortune, may in a day or a week have lost all. How then, it is asked, are plaintiff's damages to be estimated? The difficulty, if any exists, of estimating the damages, is not sufficient reason for denying to the plaintiff any redress whatever for the wrong and injury inflicted. It is not necessary in this connection, however, to lay down what the true rule of damages is. It is sufficient to say that there was evidence tending to show that *within* the time in which the contract was to have been performed, it was renounced and repudiated by the defendant, and

that his social and pecuniary standing remained the same when the action was brought, as when the contract was entered into, so that, whatever difficulty in estimating damages might, in certain cases exist, none exists in this case.

IV. Appellant complains of the tenth instruction, which is in these words:

**3. —— pecuniary circumstances of defendant.** "No. 10. The actual and reputed pecuniary circumstances of the defendant may be considered by you, as far as it shows the condition in life that plaintiff would have secured by the consummation of the marriage, but the poverty or inability of the defendant to pay the damages is not to affect the amount thereof."

It is argued that this instruction tended to mislead the jury on the question of damages; that they are told by the instruction, "that, if the defendant is a rich man, of good standing, damages should be found accordingly; but if he is a poor man, of humble station, that fact should make no difference in the damages."

We think the instruction is not fairly susceptible of the interpretation given to it by appellant's counsel; and, taken in connection with the eighth and ninth instructions of the court, fairly expresses the law. They are as follows:

"8. If you find that plaintiff is entitled to recover, then the amount thereof is to be determined by you, from all the circumstances in the case, without any special proof as to the amount, and the amount of the damages should include indemnity for the injury to the feelings, affections and wounded pride of plaintiff, as well as the loss of marriage."

"9. In determining the amount of damage on account of loss of marriage, you should take into consideration the rank and condition of the parties, the estate of the defendant and all the facts proven in the case, and award damages commensurate with the injury inflicted."

The action is given as an indemnity to the injured party for the loss she has sustained, and has always been held to embrace the injury to the feelings, affections and wounded pride, as well as the loss of marriage. Sedgwick on Meas. of Dam. (5th ed.) 421. The damages rest in the sound discretion of the jury in each particular case, and all the circumstances of the case are to be considered. *Southard v. Rexford*, 6 Cow. 254. And, as the loss of marriage is an element of damage, it is proper for the jury to consider the pecuniary, as well as the social, standing of the defendant as tending to show the condition in life which the plaintiff would have secured by a consummation of the marriage; but the question, whether the defendant will be able to pay the damages awarded, should have no influence with the jury in estimating the same, for, if such were the law, a defendant might escape a verdict altogether upon the sole ground that he was insolvent — unable to pay a judgment of any amount whatever.

V. The court further instructed the jury in the eleventh and twelfth instructions, in substance, that an offer on the part of defendant to fulfill the contract, after a refusal, should not be considered as affecting the damages, and that his offer to do so in open court on the trial of the cause, if plaintiff would dismiss the suit, should not be regarded by the jury either as a defense to the action or in mitigation of damages.

4. —— subsequent offer to perform.

Appellant complains of these instructions as erroneous. It is not urged that an offer to execute the contract after a refusal would be a defense to the action, but it is insisted that it should go in mitigation of damages, and that it would have forbidden exemplary damages in the case. Exemplary damages were not asked for, nor is there any thing in the instructions of the court that would permit the jury to give such damages. The court directed, in case of recovery, compensatory damages only, such an amount as would indemnify the plaintiff for the injury to

the feelings, affections, wounded pride of the plaintiff, and the loss of marriage.

Appellant does not complain that the damages are excessive.

This disposes also of the point of appellant's argument wherein he complains of the giving of the fourteenth and fifteenth instructions, in which the court told the jury what would amount to a refusal on plaintiff's part to accept a subsequent offer of defendant to perform. If there was error in these instructions, it was error without prejudice. The plaintiff had a right to refuse his offer to fulfill his promise, made after his renunciation of the contract, and after suit brought, so that the error, if any, was upon an immaterial matter.

VI. The appellant insists that the court erred in giving the seventeenth instruction. Taken in connection with 5. EVIDENCE: the sixteenth, there was no error, nor could interest. the jury have been misled or the defendant prejudiced thereby. The plaintiff's father was a witness in her behalf, and the court told the jury that, in examining the interest manifested by him, if any was so manifested, they should consider the natural affection a father has for his daughter; that they might look at his feelings in regard to the alleged injury to the plaintiff, the disgrace, etc., and that any interest manifested by him should be considered by the jury as affecting his credibility as a witness and for no other purpose. These directions were clearly right. The feeling or interest manifested by a witness in giving his testimony is proper to be considered as affecting his credibility only. 1 Greenlf. Ev., §§ 446, 461; Rev., §§ 3978, 3979, 3980.

The judgment is

Affirmed.