## Folz *v.* Wagner.

[No. 3,276. Filed May 29, 1900.]

BREACH OF MARRIAGE PROMISE.—*Complaint.*—An averment in a complaint in an action for the breach of a marriage contract that "defendant, in consideration of the agreement and promise of the plaintiff to marry him on request, promised and agreed to marry this plaintiff," does not amount to an allegation that the man promised to marry the woman on request, but that he promised to

marry her in consideration of her promise to marry him on request, and it was not necessary to aver in the complaint a request to marry on the part of plaintiff. *pp. 695-697.*

BREACH OF MARRIAGE PROMISE.—*Release.*—Where defendant wrote plaintiff a letter to the effect that he loved her with a true heart, but that he had proved false to her, and was going to be married in a few days to another woman, a letter written by plaintiff, in answer, that she would forgive him, but that it was hard to do so after waiting for six long years; that she did not wish him any bad luck, but if in after years bad luck should befall him, just to think back, did not amount to a release of defendant from his marriage contract. *pp. 697-699.*

From the Vanderburgh Circuit Court.   *Affirmed.*

*W. H. Gudgel,* for appellant.
*G. F. Denby,* for appellee.

BLACK, J.—Appellant's demurrer for want of sufficient facts addressed to the appellee's entire complaint consisting of two paragraphs was overruled. In each paragraph the appellee sought damages for breach of marriage contract. Each paragraph contained an averment that, on, etc., "the plaintiff then being unmarried, and over the age of eighteen years, the said defendant, in consideration of the agreement and promise of the plaintiff to marry him on request, promised and agreed to marry this plaintiff." The first paragraph, among its averments, shows that the appellee, confiding in said promise and agreement of the appellant, and in his often thereafter expressed intention of complying therewith, and believing in the sincerity and honesty of appellant's pretended intentions, ever held herself in readiness and willingness to marry him from the time of said engagement until the 17th day of July, 1894, when he, proving false to the appellee, and to the promise he had made her, married another woman named, who had ever since been his wife. The second paragraph contains a like averment, except that the time to which the appellee held herself in readiness and willingness to marry the appellant was stated to be the 13th day of July, 1894, when she was notified and informed by him that he intended to

marry said other woman on the 17th day of that month, when he did marry said other woman, who had ever since been his wife, etc.

No other portions of the complaint need be set forth to illustrate the only objection proposed to the pleading by the appellant. Counsel refers in argument to the averment that the defendant, "in consideration of the agreement and promise of the plaintiff to marry him on request, promised to marry this plaintiff;" and counsel says that, by this averment, "she alleges that the marriage was to be consummated on her request, and then fails to allege that she made such a request and furnishes no reason or excuse for not complying with this part of her contract;" and counsel claims, that "this complaint, to have been good, should have alleged that on request made by her he refused to marry her."

The construction thus placed by counsel upon the quoted language of the complaint is manifestly faulty. It is not alleged that the man promised to marry the woman on request, but it is averred that he promised to marry her in consideration of her promise to marry him on request. The complaint shows that the appellee, confiding in the appellant's promise, held herself in readiness and willingness until he had broken the engagement and had rendered a request from her useless and the fulfilment of his promise impossible. Where, in such a case, it is shown in the complaint that the defendant has married another, it is not necessary to aver a request to marry on the part of the plaintiff. *King* v. *Kersey,* 2 Ind. 402; *Hunter* v. *Hatfield,* 68 Ind. 416.

In *Kurtz* v. *Frank,* 76 Ind. 594, 40 Am. Rep. 275, it was said that where there has been an abandonment of the defendant's relation of suitor and a renunciation of his promise to the plaintiff, a request on her part is not necessary. See, also, *Jones* v. *Layman,* 123 Ind. 569; *Walters* v. *Stockberger,* 20 Ind. App. 277, and cases cited. If under any circumstances it would be proper to hold that

the man who has entered into such a contract as. that alleged in the complaint would not be bound to offer to fulfil his promise and to request the woman to "name the day",—that the groom would not be bound to seek the bride, and that, to perfect her cause of action, she would be subjected to the indelicacy of demanding before suit brought the fulfilment of the engagement (*Graham* v. *Martin,* 64 Ind. 567; *Wehrli* v. *Rehwoldt,* 107 Ill. 60); yet we can not so decide where it is shown, as in this complaint, that he notified her of his intention to marry another woman, whom subsequently he married.    The objection urged against the complaint can not be sustained.

The verdict can not be disturbed because of the evidence, unless it can be held that it showed an agreement for the release of the appellant from his engagement, as pleaded in a paragraph of the answer.

When the contract of marriage was made, the parties resided at Evansville, in this State, and the appellant continued to reside there; but before appellant was prepared to marry, the appellee with her parents removed from that city.    The engagement continued for a number of years, during which the parties did not often meet each other, but they kept up a correspondence by letters written by each to the other in terms of affection.    A number of his letters were introduced in evidence.    In a letter sent by him April 20, 1894, he spoke of his great love for her, and of his purpose to go to her, and of their being man and wife. In a letter from him mailed May 10, 1894, he referred to his having told her in his last letter that he was "coming up soon," and stated that a man who was going to buy him out could not agree with another person mentioned about the renting of the store; but the appellant further stated that he was going to sell out "just the same."    He proceeded to write:  "Anna, you wanted to know when I was coming, so you could prepare," etc. He said he was homesick to see her, and that he dreamed of her; also, that he sometimes thought he should go west

and then send for her; and that then he thought he should go to the place where she resided first, and if he could get anything to do there, they could both make up their minds where to go. He further said that he thought he would be up to Honesdale, the place where she resided, about the last part of that month (May, 1894), if nothing happened. In the next and last letter written by him to her, postmarked at Evansville, July 11, 1894, and received by her July 13, 1894, (the spelling of which we take the liberty of improving) he said: "Dear Anna: I received your letter, Anna, with a broken heart. I will answer this letter, and tell you the truth. Anna, I did love you with a true heart, and do yet; but, Anna, I proved to be false to you, but not because I did not love you. Anna, I am going to be married the 17th of this month to Anna Seibert. Anna, you could had her place a thousand times more, not to say anything against my intended wife. Anna Seibert is a good girl. Anna, I must close, wishing you all the good luck in the world; and, dear Anna, lead a decent life. Anna, you are a lady, and you have plenty of chances to do well. May be God wanted us not to come together; so, good by, Anna. If you wish to answer this, please do; for a letter from you is always welcome. Your friend, Peter H. Folz."

On the next day after the receipt of this letter, the appellee wrote the appellant a letter, of the contents of which secondary evidence was given. There was conflict in the testimony as to its language. The appellee's version of it was as follows: "Mr. Peter Folz: Your letter received, and, heart broken, I shall now answer. You ask me to forgive you. Well, Peter, I will forgive you, but it is hard to do so after being treated like that, after waiting for you six long years. I do not wish you any bad luck; but if in after years bad luck should befall you, never ask why, but just think back. Perhaps these words will come to you when I am no more."

The appellant was married, as he had written, on the

Folz *v.* Wagner.

17th of July, 1894, in church, where the banns had been published for this marriage on three successive Sundays preceding that date. The appellant on the evening before his marriage received the appellee's answer to his said last letter, at the home of his prospective bride, and read it to her and other members of her family there assembled. It is claimed that he was thereby released from his contract to marry the appellee. Her letter, when compared with the letter to which it is an answer, indicates, as does the whole evidence before us, the mental and moral superiority of the lady. She, however, gave him too much credit in saying that he had asked forgiveness. He did not even ask or suggest a release from his engagement. He proposed to tell the truth, which was that he had proved false to her, and was going to be married in a few days thereafter to another woman. Without attempting to characterize properly his letter, or to analyze particularly either it or her answer, it seems sufficient to say that there was no agreement between the parties for the release of the appellant from a subsisting contract. He broke the contract by his renunciation of his engagement, and thereby her right of action against him at once accrued; and the forgiveness which she sorrowfully expressed did not indicate her consent that he should not marry her, or that he should marry another. Her letter, taken as a whole, was an expression of regret for what he had already done. It condemned and upbraided him for his breach of the engagement. The evidence was sufficient to sustain the verdict.

The verdict was for $1,800, which it is contended was somewhat excessive, in view of certain specified evidence as to the value of the appellant's property. There was, however, other evidence from which the jury might well have concluded that he was worth a much larger amount than that indicated in the evidence referred to by appellant in argument. There is no indication of any improper motive of the jury in the assessment of damages.

Judgment affirmed.