DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

### NOVEMBER TERM, 1914.

---

EMMA J. CORDUAN, APPELLANT, v. LEONARD J. McCLOUD, RESPONDENT.

Submitted November 21, 1914—Decided March 1, 1915.

1. A tender of performance of a promise of marriage must be made in good faith, and if, in any view of the testimony, the good faith of the tender is questionable, then it is a question of fact for the jury.

2. In an action for breach of promise to marry, an unequivocal intention on defendant's part not to perform his contract, may be inferred from his conduct.

3. Where no time of performance of a marriage contract is fixed, an action for breach thereof may be brought after a reasonable time.

4. It is presumed that a marriage contract, where no time is fixed, is not intended to be performed more than a year after its making, and, therefore, it does not fall within the statute of frauds requiring a promise not to be performed within a year, to be in writing; and, as such a contract is possible of performance within a year, a jury would have a right to infer that the defendant did not intend to perform it, when, in fact, he permitted five years to elapse without having done so.

143

5. Defendant's offer of marriage after breach is, as a rule, no defence.
6. An offer on the part of the defendant to fulfill the promise of marriage after his refusal to do so, or a renewed offer in his answer or in open court, is not a defence unless it is made *bona fide*, and unless, also, the plaintiff has not signified an intention to regard the contract as at an end; these questions are questions of fact, and are for the jury.

On appeal from the Supreme Court.

For the appellant, *Edwards & Smith* and *William G. McLoughlin*.

For the respondent, *Frank Koch*.

The opinion of the court was delivered by

WALKER, CHANCELLOR. This was an action at law for a breach of promise of marriage. The complaint alleged that the promise was made on July 4th, 1908, which was renewed subsequently; that plaintiff relied upon these promises, remained and continued sole and unmarried and had been and still was ready and willing to marry the defendant. Breach alleged, and damages in the sum of $50,000 demanded.

Defendant in his answer admitted the promise and its repeated renewals, but denied that the plaintiff had been at all times, and was still, ready and willing to marry him, and said, although he ever since the promise had been ready, willing and anxious to marry the plaintiff and had asked her to fix the date for the marriage, that the plaintiff at all times refused to fix a date or to marry him at any date fixed by him, and he tendered himself ready, willing and anxious to marry the plaintiff at any time if she so desired.

Plaintiff testified that after visiting her a year, and on July 4th, 1908, the defendant proposed marriage to her at her home in her daughter's presence and that she accepted; that there was no stated time for the performance of the marriage; that he set the time in the spring and then in the fall, and that he made excuses that he did not have time, his children were sick, there was to be an increase in his daughter's

family; that he kept calling on her up to January 15th, 1913, when, on that evening he wanted to go and get married right away and she said that he knew better, that they could not get a marriage license at that time (after eight o'clock P. M.); that he never got a license and never came back; that she did not want to marry him then (time of trial) after she had been humiliated.

Plaintiff's daughter, Clara L. Wilson, corroborated her mother as to the engagement; that she heard him make excuses for not getting married; that she asked him when they were going to be married and he said that they were going to be married soon, but they were not; 'that she heard defendant ask her mother to go and get married January 15th, 1913, and heard her reply that they could not get a license then; that the place (office) would be closed up; that was after eight o'clock in the evening and defendant did not go out to get a license, and that was the last time he was at the house.

On cross-examination Mrs. Corduan testified that on January 15th, 1913, she was not ready and willing to marry the defendant, and told him so, and said that he had refused her many times before. She qualified this by saying that it was in an argument with him, and that she never had a chance to marry the man, and afterwards said that she never refused to marry him.

The alleged tender of marriage on January 15th, 1913, was not set up by the defendant in his answer but was elicited at the trial. It may, however, be said to be involved in his statement that he had always been ready and willing and anxious to marry the plaintiff and offered himself to her, but that she had at all times refused, &c. Anyhow, plaintiff's counsel in his brief does not claim that it could not be made evidence because not pleaded, contending that the so-called tender was not sufficient to warrant the court in withdrawing from the jury the question whether it was an offer made in strict performance of the engagement, and whether plaintiff rejected it, and, further, that defendant had so long delayed performance that the reasonable time

allowed by law had expired, and the breach having already come about, no subsequent tender, whether on January 15th or after the commencement of the suit, was available.

The evidence on this question, plaintiff's counsel submits, raised a question whether the tender was made in good faith or was merely intended to snare the plaintiff into an answer which defendant could distort into an outright refusal.

A tender of performance of a promise of marriage, like that of other promises, must, of course, be made in good faith, and if, in any view of the testimony, the good faith of the tender is questionable, then it is a question of fact for the jury.

The delayed offer by defendant to redeem his promise may be said to be like a disingenuous and studied invitation by a deserting husband to his wife to return to him, which is unavailing to absolve him from the consequences of a situation of his own creation. *Arrowsmith* v. *Arrowsmith*, 71 *Atl. Rep.* 702, 704.

In an action for breach of promise to marry, an unequivocal intention on defendant's part not to perform his contract, may be inferred from his conduct. *Coil* v. *Wallace*, 24 *N. J. L.* 291.

Appellant contends that it was improper to withdraw from the jury the consideration of the question whether or not the defendant had tendered himself ready and willing to perform his promise within a reasonable time, no time having been fixed for the marriage.

The law appears to be that where no time of performance of a marriage contract is fixed, action for breach thereof may be brought after a reasonable time. 5 *Cyc.* 1001.

Such a contract, where no time is fixed, is presumed not to be intended to be performed more than a year after its making, and, therefore, does not fall within the statute of frauds requiring a promise not to be performed within a year, to be in writing. 5 *Cyc.* 1000. As the contract in question was one which was possible of performance within a year, the jury would have had a right to infer that the defendant

did not intend to perform it, when, in fact, he had permitted five years to elapse without having done so.

Defendant's offer of marriage after breach is, as a rule, no defence. 5 *Cyc.* 1004.

In *Holloway* v. *Griffith,* 32 *Iowa* 409, it was held: "An offer on the part of the defendant to fulfill the marriage contract after a refusal, or a continuance of the offer in open court upon the trial, on condition that plaintiff would dismiss the suit, should not be regarded by the jury either as a defence or in mitigation of damages."

The *condition* of the renewed offer of marriage in the Holloway case "that the plaintiff dismiss the suit" could have no particular effect. If the offer were made without any such condition, the result would be the same, for, if accepted, the suit would at least have to be continued to enable the ceremony to be performed, and if it were, then of course the action would abate; and, if rejected, the defendant would have any advantage that might flow from his having made it.

We hold that an offer on the part of a defendant to fulfill the premise of marriage after his refusal to do so, or a renewed offer in his answer or in open court, is not a defence unless it is made *bona fide,* and unless, also, the plaintiff has not signified an intention to regard the contract as at an end. These are questions of fact and are for the jury.

This case should have been submitted to the jury; and that, not only upon the question as to whether the defendant had broken his contract and had made a belated and feigned offer of performance, but also whether the plaintiff had not herself broken the contract, and whether her rejection of the defendant's offer or offers was made in good faith. For it may be that this long courtship was continued by and with the mutual understanding and consent, implied if not expressed, of both of these parties, and that what occurred on January 15th, 1913, did not operate to put an end to the contract. The facts of the whole matter raised essential jury questions, and they should have been submitted. It follows that the nonsuit was wrongly granted, and that the judgment should be reversed and a *venire de novo* awarded.

*For affirmance*—BLACK, TERHUNE, WILLIAMS, JJ.    3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ.   13.