### ETTA RUTTER v. WILLIAM COLLINS.

[See 96 Mich. 510.]

*Trial—Conduct of counsel—Breach of promise of marriage—Damages—Instructions to jury.*

1. The use of methods in examining witnesses which imply facts which cannot be proved is not to be approved, and the argumentative way of presenting a case is better than the

vituperative; but, as a rule, the circuit judge must take care of such matters, which he can do much more satisfactorily and effectually than can the appellate court; citing *Randall v. Association*, 101 Mich. 561.

2. In an action for alleged breach of promise of marriage, the court, after instructing the jury that the contract under which the suit was brought was one for life, involving associations and emotions which, if the parties properly cared for each other, would bring to them the highest good, added: "I have said, the 'contract under which this suit was brought,' but by that I do not mean to state that a contract was made, but simply to say what the rule of damages in this kind of a case would be. If you find the contract was made, and a breach of that contract of marriage, the damages would involve injured pride and humiliation, * * * and you should take into consideration plaintiff's wounded feelings, humiliation, and loss of peace of mind, and award to her such damages as will compensate her for such injury." And it is held that if, technically, the language used may be said to imply the existence of wounded pride, humiliation, etc., the charge as a whole gave the jury to understand that plaintiff was to recover only compensation for what they might find she had actually suffered; that the court did not say that a breach of the contract would involve these things, but rather that they were involved in the consideration of the question of damages.

3. The jury were further instructed to consider the social standing of the defendant (who, as shown by the undisputed evidence, was, at the time of the alleged breach of contract, a man of some property, and the sheriff of the county), and to award to the plaintiff (who was then engaged in doing general housework) such a sum as would compensate her for the loss of the station to which her marriage with the defendant would have advanced her; also to take into consideration the pecuniary circumstances of the plaintiff, and compensate her for the loss of the home that the defendant, by his contract, if he made it, invited her to come to. And it is held that, if defendant had married plaintiff, it would have been an advance in station for her, in the estimation of society; that it would have been his duty, and according to the common experience, that he should provide for her a home which should be an improvement on such a home as a woman who works out usually has, and that the jury could hardly have failed so to conclude; that the jury must have understood that they could award damages only for a *loss* of these things, which the plaintiff could not have lost if they would not have existed; that what was said about plaintiff's pecuniary circum-

stances was probably in connection with the home referred to, the attention of the Court not being directed to any evidence upon the subject, except as it might be inferred from plaintiff's occupation, and that it was within the rule laid down in *Vanderpool v. Richardson*, 52 Mich. 339, where it was held that the fact that the plaintiff, in a suit for the loss of a marriage and of an expected home, is without the means to provide an independent home for herself, is not entirely unimportant.

Error to Clinton. (Daboll, J.) Argued November 2, 1894. Decided December 18, 1894.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion, and in 96 Mich. 510.

*Lyon & Dooling* (*M. V. Montgomery*, of counsel), for appellant.

*S. L. Kilbourne* (*Fedewa & Walbridge*, of counsel), for plaintiff.

HOOKER, J. The defendant appeals from a judgment of $1,000 in an action for breach of promise of marriage. As stated in counsel's supplemental brief, error is assigned upon three points:

1. The repeated asking and withdrawal of improper questions.
2. The statement of counsel, in argument to the jury, that defendant should be punished for his misconduct.
3. Error in charge of the court.

We will consider them in inverse order.

The case has been in this Court before, and will be found reported in 96 Mich. 510, where a statement of facts, in the main, as shown upon this trial, will be found.

The eleventh assignment is based upon the following portion of the charge:

" Taking into account what I have said, and what has been given you bearing upon that subject during the

courtship, and after the time it is claimed that the contract was made, which has been allowed to go to you as bearing upon the proposition of her acceptance and the forming of a contract, looking the whole situation of the parties over in connection with all the evidence here, you are to decide who is in the right in that contention."

The contract relied upon was said to have been made by an offer of marriage and immediate acceptance. The defendant admitted the offer, but denied the acceptance. Evidence was given showing the subsequent relations of the parties. Upon the former hearing it was held that this testimony was admissible, but the case was reversed upon the ground that the charge of the court permitted the jury to find a renewal of that offer and an acceptance from subsequent conduct of the parties, consistent perhaps with engagement, but not in itself constituting an offer or promise. It was held to be corroboratory only. In charging the jury the court said:

"I do not think there is any form of words prescribed which must be used on an occasion of this kind, gentlemen; but in this case it is claimed that certain things were said, and it is to that conversation and that transaction there that your attention is directed, because it is claimed that then and there the contract was made. And I say to you further, in that regard, that if the defendant proposed to Miss Rutter, saying in substance that he had regard for her, and she did not answer him and did not accept then, that would be no contract, because, as you will see from what I have already said, it lacks the element of agreement; but if you find that the plaintiff, in reply to the defendant's proposition of marriage to her, said, 'All right; then we will get married,' or that in substance, and that the defendant heard and understood it, that in law would constitute a contract of marriage. So, as to that point, gentlemen, you see where the issue lies, and I have given you upon that point all the help or instruction that I can."

This was followed by the language upon which error is assigned, quoted above. The court said, in substance:

"Taking into consideration what I have said, and the subsequent conduct of the parties, 'which has been allowed to go to you as bearing upon the proposition of her acceptance and the forming of a contract,' you are to decide that question." What question? Manifestly the question of the immediate acceptance of the admitted offer by the statement, "All right; then we will get married." He added: "You are to decide who is in the right in that contention;" and again: "If you find for the plaintiff there, and find that the agreement was made, then she is entitled to a judgment. If you find that no agreement of marriage was made at that time, that ends the case." In our opinion, these instructions left no room for a misapprehension of the point.

The twelfth assignment is upon the following:

"The contract under which this suit was brought was one for life, involving associations and emotions which, if the parties properly cared for each other, would bring the highest good to the contracting parties."

This language was immediately followed by the statement:

"I have said, 'the contract under which this suit was brought,' but by that I do not mean to state that a contract was made, but simply to say what the rule of damages in this kind of a case would be. If you find the contract was made, and a breach of that contract of marriage, the damages would involve injured pride and humiliation; and if you find the alleged breach of contract sued upon by the plaintiff, you should take into consideration her wounded feelings, humiliation, and loss of peace of mind, and award to her such damages as will compensate her for such injury."

The court thereby, with commendable caution, took pains to exclude the construction which counsel put upon his language, and of which they complain. The court appears to have been stating the rule of damages, as he says, "in this kind of a case." If, technically, his

language might be said to imply the existence of wounded
pride, humiliation, etc., we think that the charge as a
whole gave the jury to understand that she was to receive
only compensation for what they might find that she had
actually suffered.   He did not say that a breach of the
contract would involve these things, but that damages
would involve them.   In other words, they were involved
in the consideration of the question of damages.

The fourteenth and fifteenth assignments are of similar
character.   The jury were told to consider the social stand-
ing of the defendant, and to award plaintiff such a sum
as would compensate her for the loss of the station to
which her marriage would have advanced her; also to take
into consideration the pecuniary circumstances of the plaint-
iff, and compensate her for the loss of the home that he,
by his contract, if he made it, invited her to come to.
The undisputed evidence shows that the defendant was a
man of some property, who had been the sheriff of the
county, while the plaintiff was a woman engaged in doing
general housework.   If defendant had married her, it would
have been an advance in station for her, in the estimate
of society; and it would have been his duty, and accord-
ing to the common experience, that he should provide her
a home which should be an improvement on such a home
as a woman who works out usually has.   The jury could
hardly have failed so to conclude.   But, as said before, it
seems to us that they must have understood that they
could award damages only for a loss of these things, which
she could not have lost if they would not exist.   What was
said about the pecuniary circumstances of the plaintiff
was probably in connection with the home.   Our attention
is not called to any evidence upon the subject, except as
it might be inferred from her occupation.   It was within
the rule laid down by Mr. Justice COOLEY in *Vanderpool
v. Richardson*, 52 Mich. 339.

This disposes of the questions arising upon the charge.

Complaint is made of the argument of Mr. Fedewa, and the questions of Mr. Kilbourne. In the course of the argument counsel said, "Upon the other hand, gentlemen, Mr. Collins should pay for his misconduct;"—not be punished for his misconduct. If any fault can be found with this remark, it is that counsel should have said, "pay for the injury he has done her."

In discussing plaintiff's age, it is said that "Mr. Fedewa contributed his knowledge, or supposed knowledge, about the matter, and, speaking of Drum's testimony that she is 37 years old, says: 'She ain't. I believe it is true as she tells you,—her age is 31 years.'" Certainly Mr. Fedewa's belief upon the subject was not admissible. The trial court might with propriety have called attention to this, by way of rebuke of counsel, or in his charge, as was done by the learned circuit judge, with the approval of this Court, in *Amperse v. Fleckenstein*, 67 Mich. 247, cited by counsel. It could not have been anticipated, and comment upon it might have increased, rather than have diminished, the dangerous effect of it, if there was any. Counsel did not ask that it be stricken out, or offer a request upon the subject, and we cannot hold that the case should be reversed for this remark.

The same may be said about the questions and withdrawals complained of. It may be, as counsel claim, that there was method in these, and perhaps that it was dangerous to client as well as exasperating to counsel. In some instances, where it has appeared that injury did result, cases have been reversed upon such grounds. As has been said before, we do not approve of methods which imply facts which cannot be proved, and we think the argumentative better than the vituperative way of presenting a case; but, as a rule, the circuit judge must take care of such matters, which he can do much more satisfactorily and

effectually than we.   *Randall v. Evening News Association*, 101 Mich. 561.

Finding no error in the record, we are of the opinion that the judgment should be affirmed, which will be ordered accordingly.

The other Justices concurred.