[No. 5036. Decided April 28, 1905.]

LAURA HEASLEY, *Respondent,* v. DURA L. NICHOLS, *Appellant.*[1]

JURORS—QUALIFICATIONS—BIAS—NEW TRIAL—PREJUDICE PRE-
SUMED WHEN. A juror is disqualified, and a new trial is a matter
of right, where he had expressed opinions as to the merits of the
controversy and was biased and unfair, and concealed the fact
by false swearing on his *voir dire;* and injury is conclusively
presumed when it is shown that he was in favor of returning a
verdict against the appellant, although he did not agree to the
verdict returned because he thought it was excessive.

SAME—ACCEPTANCE OF JUROR—WAIVER. Acceptance of a juror
in reliance upon his sworn statements on his *voir dire,* does not
waive his disqualification for actual bias concealed by his false
swearing.

MARRIAGE—BREACH OF PROMISE—DAMAGES—EVIDENCE—PLAIN-
TIFF'S SOCIAL CONDITION. In an action for breach of promise of
marriage, it is competent for the plaintiff to show that her step-
father was a drunkard and abused her, and that her home sur-
roundings were not agreeable, and that defendant knew of such
fact, since her social and financial condition may be shown in
connection with defendant's, as affecting the advantages of the
contract and her damages.

SAME—MITIGATION OF DAMAGES—DEFENDANT'S OFFER TO MARRY
AFTER ACTION BROUGHT. In an action for breach of contract of
marriage the defendant cannot show, in mitigation of damages,
that he offered to marry the plaintiff after the commencement of
the action.

Appeal from a judgment of the superior court for Lin-
coln county, Chadwick, J., entered June 24, 1903, upon
the verdict of a jury in favor of the plaintiff, in an action
for breach of promise of marriage. Reversed.

*Merritt & Merritt* and *Myers & Warren,* for appellant.

*Martin & Grant, E. D. Reiter* and *A. C. Routhe,* for
respondent.

[1]Reported in 80 Pac. 769.

MOUNT, C. J.—Action for breach of promise of marriage. The cause was tried to the court and a jury, and verdict was returned in favor of the plaintiff for $4,560. The defendant filed a motion for new trial upon numerous grounds. Among the grounds, were the following:

"(1) Irregularities . . . by which defendant was prevented from having a fair trial. . . . (5) Excessive damages appearing to have been given under the influence of passion or prejudice. . . . (7) Errors in law occurring at the trial and excepted to at the time by the defendant."

The first ground above stated was tried upon affidavits. Upon the hearing of the motion, the court adjudged the damages excessive, and ordered a new trial, unless the plaintiff, within fifteen days thereafter, should file a remission of the amount found by the jury to $2,000, excluding costs. Within the time allowed, such remission was filed, and thereupon the court denied the motion for a new trial, and entered a judgment for $2,000 and costs. The defendant has appealed, and insists, first, that one of the jurors trying the cause was prejudiced and biased.

The juror, Dan Donahue, upon his *voir dire* examination, testified in substance, that he was not acquainted with the plaintiff; that he was slightly acquainted with the defendant; that he had heard there was such a case coming up, but that he knew nothing about the case, had formed or expressed no opinion on the case, and had no opinion upon the merits at that time. He was, upon these statements, accepted by both sides as a competent and qualified juror. After the trial of the case, it was first learned that these statements were untrue. Three disinterested persons made affidavits to the effect that the juror had discussed the case with them, or in their presence, before he was called as a juror, and therein had expressed

his opinion in favor of the plaintiff. One of these affiants stated that Donahue said, after expressing an opinion: "I would like to get on the jury, for I would give her all she sued for and a d— sight more." These affidavits were not denied. The respondent filed two affidavits, also showing that the juror Donahue knew about the case, and had formed and expressed an opinion on the merits, and had said to two different persons, "If he were permitted to sit on the jury, he would not give the girl a G— d— cent." These facts stand conceded on the record. But it appears that neither party or his counsel knew of the facts until after the trial. It is plain that this juror was disqualified by reason of his bias and prejudice. He concealed the fact, and by reason of his misrepresentations was taken and permitted to sit upon the jury. Both sides to the controversy were entitled to twelve lawful and unbiased jurors to try the questions of fact in the case. When it was shown to the court that one of the twelve selected was unfit to sit as a juror, either party deeming himself aggrieved was entitled, as a matter of right, to a new trial.

It is urged by respondent that the juror Donahue was opposed to the verdict returned, and did not agree thereto, because it was in his opinion excessive, and that therefore the appellant is not injured. It appears, as stated by the affidavits of several of the jurors, that Donahue did not agree to the verdict as returned. It also appears that he said to two or three of them that the verdict was excessive. But it appears conclusively that he favored a verdict for the respondent in some amount between $1,000 and $8,000. There would be much force in the argument of respondent upon this question, if it had been shown that the juror favored a verdict for the appellant. But it is not

so shown. We think that, upon a question so highly im-
portant as the fairness of a juror, injury should be con-
clusively presumed when it is shown that a juror is biased
and prejudiced and unfair, and is in favor of returning
a verdict for the successful party. According to the affi-
davits, the juror was biased against the prevailing party.
He was also prejudiced against the appellant. He was
biased against both parties, and was, in any event, unfit
for a juror in the case because he was not a fair and im-
partial juror. If the true condition of his mind had been
made known to the court before he was accepted as a juror,
he would have been excluded at once. The parties had
a right to rely upon his sworn statements, and waived
nothing by accepting him as a juror. But when the at-
tention of the court was called to the condition of the
juror's mind in a proper way, it was the duty of the court
to rectify the mistake by granting a new trial.

In view of the fact that a new trial must be had in this
case, it becomes necessary to decide two questions which
are presented here, and which, no doubt, will again arise
upon the introduction of evidence. Plaintiff was per-
mitted to show, over the defendant's objection, that she
maintained her home with her mother and stepfather; that
her stepfather was a drunkard, and, when under the in-
fluence of liquor, abused her; that her home surroundings
were, for that reason, not agreeable, and that defendant
knew these facts at the time of the contract of marriage.
The general rule is that the defendant's social and finan-
cial condition may be shown, in cases of this kind, for
the purpose of affecting damages. 5 Cyc. 1013, and cases
cited. In *Rutter v. Collins,* 103 Mich. 143, 61 N. W. 267,
it was held that the pecuniary condition of the plaintiff,
and the surroundings of her home life, were admissible

in evidence, for the reason that the home which defend-
ant would have furnished would have advanced her sta-
tion in life.    See, also, *Vanderpool v. Richardson,* 52
Mich. 339, 17 N. W. 936.   It seems to follow, if the social
and financial condition of the defendant is proper to be
shown, as affecting the advantages of the plaintiff, that her
own social and financial condition may be shown for the
same reason.    If she lived in poverty, or in an unhappy
home, and this condition was known to the defendant when
he entered into the contract of marriage by which he
agreed to share his home with her, her damages, by rea-
son of the breach of the contract, would necessarily be
affected by the difference in their social and financial
conditions.    If their social and financial conditions were
equal, there would then be no damages in that respect.
We can see no good reason for admitting evidence of his
condition and excluding evidence of her condition, when
both are for the same purpose, and are necessary in or-
der to determine whether there is any difference.   It was,
therefore, not error to admit the evidence.

The lower court refused to permit appellant to show
that, after the action was begun, he offered to marry the
respondent.   It is not claimed by appellant that this fact,
if shown, would be a defense to the action; but it is
claimed that it should have been allowed in mitigation of
damages, in view of the testimony discussed under the
preceding point.   It has been held that such evidence is
admissible in mitigation of damages.    *Kelly v. Renfro,*
9 Ala. 325, 44 Am. Dec. 441.   Such evidence was ex-
cluded in *Holloway v. Griffith,* 32 Iowa 409, 7 Am. Rep.
208, and in *Bennett v. Beam,* 42 Mich. 346, 4 N. W. 8,
36 Am. Rep. 442.   We think the rule in these last named

cases is more in accordance with substantial justice. As was said in the last named case:

"The contract of marriage is one so dependent upon affection that where this is wanting a union would be more likely to add to than lessen the damages."

And while it is true that defendant, by offering to marry plaintiff after the action was begun—if the offer was made in good faith—presumably placed at her disposal the social position and the home which the contract originally implied, yet when the affection which had existed between the two had ceased, and unrequited love had given way to resentment to such an extent that the plaintiff sought the public courts for redress, the offer of marriage and a home and position without affection, under the circumstances stated, would naturally be spurned, and ought not to be shown to lessen the damages which had occurred by reason of an admitted breach of the contract. It was, therefore, not error to exclude the evidence offered.

For the reason first above given, the judgment is reversed, and a new trial ordered.

FULLERTON, HADLEY, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.