[No. 12980. Department Two. December 18, 1915.]

THE STATE OF WASHINGTON, *Respondent,* v.
HARRY SWAFFORD, *Appellant.*[1]

JURY—COMPETENCY OF JUROR—BIAS—NEW TRIAL. It is error to refuse a new trial in a prosecution for statutory rape where it appears that a juror, who qualified as fair and unbiased, had talked of the charge against the accused, and stated that if he was on the jury, he would "bet he'd never get loose;" where the statement was not denied but only qualified by the juror's affidavit that, if made, it was based upon the supposition of the accused's being proved guilty; since if he made such unconditional statement of belief and intention, he was not a qualified and impartial juror (MAIN, J., dissenting).

APPEAL—REVIEW—DISCRETION—NEW TRIAL—MISCONDUCT OF JUROR. The supreme court is not bound by the action of the trial court in passing upon the competency of a juror as a question of fact, and refusing a new trial, where his statement showing bias was not positively denied, but only qualified by an explanation as to what he meant by unequivocal words (MAIN, J., dissenting).

Appeal from a judgment of the superior court for Cowlitz county, Darch, J., entered April 27, 1915, upon a trial and conviction of rape. Reversed.

*Magill, McKenney & Brush,* for appellant.
*Homer Kirby* and *Miller & Wilkinson,* for respondent.

[1]Reported in 153 Pac. 1056.

HOLCOMB, J.—Appellant was prosecuted upon a charge of carnal knowledge of a female child, and convicted. He unsuccessfully moved for a new trial, and from the judgment and sentence on the verdict, he appeals.

There is error. Juror Jasperson qualified on his *voir dire* as a fair and unbiased juror to try the cause. On the motion for new trial, it was shown by affidavits that this juror, prior to his being called as a juror, had talked of the charge involved herein and of the defendant, and had used an opprobrious epithet concerning defendant, and said: "If I was on the jury that tried him I'll bet he'd never get loose," or words to that effect. This statement is shown by the affidavit of one Carroll. Carroll later made a counter-affidavit which the prosecution presented, wherein, although he reiterates that the juror made the statement first mentioned, he attempts to interpret it himself by saying that "he did not intend to convey the meaning that Jasperson meant by such statement to convict Swafford regardless of the testimony. Affiant believes that the statement made by Jasperson, as well as expressions of others working in the gravel pit [where the statement was made by Jasperson] were all based upon the assumption that if Swafford were guilty of the crime charged he ought to be punished." But these qualifying words did not go with the statement of belief and intention charged to Jasperson, and the affiant was not competent to interpret plain, unequivocal language, making an unqualified statement, otherwise than as the words plainly imported.

If this man made such unconditional statement of belief and intention, he was not a qualified, fair, and impartial juror to try the cause. He himself does not unequivocally deny having made the statement imputed to him, but, in a counter affidavit, says only, that "he does not recall having made the statement imputed to him, but that if he did, such statement was based upon the supposition of his being proven guilty."

Another person, who worked in the same gravel pit at the same time, makes affidavit that he did not hear Jasperson make such statement; another makes affidavit that he heard the conversation alluded to, but that he cannot remember the exact words used and will not attempt to make any statement regarding the same. It is thus seen that the statement is not sufficiently denied, even by the juror himself, and is only attempted to be explained and interpreted by mental reservations not at the time expressed or even intimated.

In *State v. Underwood,* 35 Wash. 558, 77 Pac. 863, it was held by this court that it was proper to deny a motion for a new trial upon affidavits showing prejudice on the part of a juror and that he had wilfully qualified, when the charge is unequivocally denied, and is entirely overcome by other affidavits that the charge of wilful misconduct of the juror was either mistakenly or wrongfully made. The same, in effect, was held in *State v. Moretti,* 66 Wash. 537, 120 Pac. 102, where the assailed juror and one additional disinterested witness contradicted the assailing testimony and explained it away.

In *Heasley v. Nichols,* 38 Wash. 485, 80 Pac. 769, a civil case, a person, before he was called as a juror, had discussed the case, expressed an opinion, and then stated: "I would like to get on the jury, for I would give her all she sued for and . . . more." These statements were not denied. This court said:

"It is plain that this juror was disqualified by reason of his bias and prejudice. He concealed the fact, and by reason of his misrepresentations was taken and permitted to sit upon the jury. Both sides to the controversy were entitled to twelve lawful and unbiased jurors to try the questions of fact in the case. When it was shown to the court that one of the twelve selected was unfit to sit as a juror, either party deeming himself aggrieved was entitled, as a matter of right, to a new trial."

If that be true in a civil case, how much more true and more important in a criminal case, especially where the crime charged is of a most heinous nature.

Appellant was entitled by the law of the land to a fair and impartial trial by twelve jurors who were indifferent and unbiased toward him and the charge against him individually. When it was shown by competent and positive testimony, and only partially denied and reservedly explained by the juror, that one juror was not indifferent and impartial, but had a positive and declared opinion and a disclosed intention regarding the case should he become a juror, it cannot be lightly passed or ignored. It is said by respondent that this is a question of fact which the trial court passed upon and determined as such, and the cases heretofore cited and others are relied upon to sustain the action. But it is not here a square conflict between the witnesses assailing the juror and a reasonable explanation or positive and unequivocal denial on his part, with some supporting evidence or circumstances, upon the determination of which by the trial court we would not interfere. As we have said, the statement showing bias on the part of this juror is not positively denied, and is only qualified by an explanation of what he really meant, in the face of his positive and unequivocal words. His prejudgment, bias, prejudice, and intention were, therefore, established; at least, to such an extent as to attaint the verdict.

Judgment reversed, and a new trial ordered.

MORRIS, C. J., BAUSMAN, and PARKER, JJ., concur.

MAIN, J. (dissenting)—I think this case falls within the rule of the cases of *State v. Underwood*, 35 Wash. 558, 77 Pac. 863, and *State v. Moretti*, 66 Wash. 537, 120 Pac. 102, and does not come within the rule of the case of *Heasley v. Nichols*, 38 Wash. 485, 80 Pac. 769. The question is not whether the juror had previously made statements based upon rumors which were derogatory to the appellant, but

whether the juror was biased or prejudiced against the appellant.

This case is distinguishable from the *Heasley* case in this: In that case the juror, upon his *voir dire*, concealed the fact of his bias and prejudice, and by reason of his misrepresentations was taken and permitted to sit upon the jury. In this case, the juror Jasperson did not conceal anything upon his examination upon the *voir dire*, but stated positively that he was able to, and would, give the appellant a fair and impartial trial. In addition to this, the affidavits showing bias and prejudice in the *Heasley* case were not denied. In this case, Jasperson, while not unequivocally denying that he made the statement charged to him, did deny that he had any memory of making such a statement. Obviously, if he had no memory of the statement, it cannot well be said that he was biased and prejudiced against the defendant by reason of having made it, if he did make it. Whatever was said was based upon rumors prevalent at the time the crime is alleged to have been committed.

It does not seem to me that the verdict of a jury should be overturned because one of the jurors may have previously made a statement based upon rumors, which statement, at the time he qualified as a juror, had disappeared from his memory. As already stated, the juror having no memory of the previous statement charged to him, his verdict could not be influenced thereby; and it ought not to be sufficient to operate to impeach the verdict.

For the reasons stated, I am unable to concur in the majority opinion, and therefore dissent.