[Crim. No. 2961. In Bank.—September 2, 1927.]

## THE PEOPLE, etc., Respondent, v. FREDERICK DAVID GALLOWAY, *alias* FRED ROLAND, Appellant.

[1] CRIMINAL LAW—JURIES AND JURORS—CONCEALED BIAS—MISCONDUCT—NEW TRIAL.—Actual bias of a juror becomes, where concealed, positive misconduct and continues to be such throughout such juror's service on the case, and if such misconduct is unknown to the accused until after the trial and verdict, the trial court has power to grant a new trial, basing it upon subdivision 3 of section 1181 of the Penal Code.

[2] ID.—STEPS IN TRIAL—MISCONDUCT OF JUROR—NEW TRIAL.—After an issue of fact is joined in a criminal case, every step thereafter taken for the purpose of a determination of that issue in the court where the cause is pending up to and including the verdict upon such issue must be regarded as a step or proceeding "arising during the course of the trial," and any substantial error of the court upon any matter or question intervening between the joining of issue of fact and the rendition of a verdict thereon, and any misconduct of a juror, who participates in the verdict, from the time he is called in the case and sworn and examined on his *voir dire* up to the final act of rendering the verdict, is proper ground for a motion for a new trial, and on appeal from an order of the court denying or granting such motion, upon such grounds, the appellate court is confined to a review of the proceedings within these limits.

[3] ID. — SECTION 1181, PENAL CODE — MISCONDUCT OF JUROR — NEW TRIAL.—Under section 1181 of the Penal Code, subdivision 3, it is within the power of the trial court to grant an accused a new trial because of misconduct of a juror whether such misconduct consists of failure to disclose a prejudicial mind at the time he is sworn or whether such misconduct arises after he is sworn as a member of the trial jury, subject to the qualification that such misconduct will not be considered sufficient where the accused has failed to exercise diligence in the premises or has knowledge prior to the verdict of such misconduct; nor will it avail an accused when, from a consideration of the whole case, it can be seen that he has suffered no injury therefrom.

[4] ID.—UNBIASED JURY—CONSTITUTIONAL GUARANTEE.—The right to unbiased and unprejudiced jurors is an inseparable and inalien-

2. See 8 Cal. Jur. 418.

4. Right to unbiased jury, note, 9 **Am. St. Rep.** 744. See, also, 15 **Cal. Jur.** 366; 16 **R. C. L.** 261.

able part of the right to trial by jury guaranteed by the constitution.

[5] ID.—BIAS OF JUROR—PROOF OF.—Where a juror has prejudged defendant's guilt before hearing the sworn testimony, it cannot be said that the defendant has had a fair trial before an impartial jury, and a new trial will be granted; and where the juror declared on his *voir dire* that he was not biased, his statement may be negatived by proof of prior statements of such a character as to show a fixed opinion on his part, and if the bias is unknown to the defendant until after the verdict it will call for a new trial.

[6] ID.—MURDER — INSTRUCTIONS — DRUNKENNESS. — In a prosecution for murder in which the testimony of disinterested witnesses showed actual intoxication of the defendant up to and within an hour of the time of the homicide, the trial court should not have instructed the jury that evidence of drunkenness in murder cases can only be considered by the jury for the purpose of determining the degree of crime, and for that purpose it must be received with great caution.

---

(1) 16 **C. J.**, p. 1159, n. 5.   (2) 16 **C. J.**, p. 1152, n. 20.   (3) 16 **C. J.**, p. 1155, n. 42.   (4) 35 **C. J.**, p. 237, n. 90, p. 327, n. 38.   (5) 16 **C. J.**, p. 1154, n. 35, 36, p. 1240, n. 8.   (6) 16 **C. J.**, p. 940, n. 46.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. J. R. Welch, Judge. Reversed.

The facts are stated in the opinion of the court.

S. F. Holstein and O'Gara & De Martini for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

PRESTON, J.—Appellant was convicted and sentenced to pay the death penalty for murder of one Andrew Pashuta. In support of his appeal from the order denying a new trial he urges insufficiency of the evidence to justify conviction for first degree murder, the elements of premeditation and deliberation being, so it is claimed, wholly unproved; erroneous instructions given by the trial court to the jury, and prejudicial misconduct on the part of one of the jurors.

---

6.  See 8 *Cal. Jur.* 365.

The homicide occurred on the last night of the Rose
Festival at San Jose, Saturday, May 22, 1926, about mid-
night, on a road near the highway to Monterey, some four
or five miles from San Jose. On the preceding Thursday
appellant and deceased had met for the first time in St.
James Park and became acquainted through their mutual
fondness for the ukulele, which both had and played. They
spent Thursday evening, part of Friday, and Friday and
Saturday evenings together. Appellant was at that time
about twenty-four years of age, while Pashuta was a year
or so younger. Pashuta resided in San Jose at the house
of Mrs. Ida M. Bunch, 353 South Fourth Street, and as
appellant was only in town for the festival, Pashuta intro-
duced him to Mrs. Bunch as his friend, and on the fateful
evening had asked her permission for appellant to occupy
his room with him that night. The boys went to Pashuta's
room to dress for the evening and Pashuta asked Mrs. Bunch
to come up and hear appellant play the ukulele, saying: "He
can make it talk." He also asked if he might defer payment
of his rent as he and appellant wished to have a good little
time that evening. The boys left the house in Pashuta's
automobile, an old Chevrolet roadster, about 8 o'clock.
They first purchased two bottles of "white liquor" and after
drinking some of it, drove on to St. James Park. There they
talked with three other boys, two of whom testified that they
drank with both Pashuta and appellant, and one of whom
stated Pashuta and appellant were intoxicated while with
him and that they left about 10:30 P. M., saying they in-
tended to go some other place to make some money—evi-
dently Chick Leddy's, a roadhouse. The testimony of the
various witnesses, without conflict, shows that appellant and
Pashuta were apparently very good friends during this
entire period, dancing and singing together and playing
their ukuleles.

As to what took place after they left for Chick Leddy's,
we have only the testimony of appellant, which was, in sub-
stance, as follows: The boys left the park with the intention
of driving to the above-mentioned roadhouse, which was
some distance south of San Jose, but as it was too early
to go there, being only about 11 o'clock, they turned up a
side road, facing the machine toward the highway, and
there remained until the fatal occurrence. The car belonged

to Pashuta and he drove it. They drank as they went along, Pashuta having a jug of wine in addition to the "white liquor."

When appellant was arrested in Venice, California, about two weeks later, he made a written confession, introduced in evidence by the prosecution, stating his subsequent actions to have been substantially as follows: While he and Pashuta were parked near the highway, as above set forth, and while both of them were intoxicated, an argument arose between them. Appellant stated that about six months previous in a fit of despondency he had enlisted in the United States army, from which he had deserted about four months later, after a night of intoxication. This he had confessed to Pashuta and it was Pashuta's threat to expose him as a deserter which led to the final argument culminating in death. "Q. Where were you at the time this man threatened to turn you in for desertion? A. To the best of my knowledge, we were seated in his car parked on the Los Angeles highway south of San Jose. Q. How long a time elapsed between the time he made a threat of exposure and the time you killed him? A. As I remember, the act was committed immediately after the voicing of the threat. Q. Did you make up your mind at the time he made this threat to kill him? A. I was incapable of making up my mind, but I remember taking up the first thing that came handy and striking at him. Q. Did you strike more than one blow? A. I did. Q. How many times did you hit him with this crank? A. I have no recollection of how many times I struck him, although it was more than once." The crank used to start the motor was the weapon used and the autopsy surgeon testified to four wounds on the head and face, two of them of a most serious and brutal character.

Appellant told substantially the same story as a witness at the trial. He there stated: "I was terrified at the thought of exposure, what it would mean to me and to my people, and the awful disgrace to them. As far as I can remember, at the moment of the threat I lost control of myself, and picked up the first thing that came handy and struck at him. Hazily I remember dragging him from the car into a field at the side of the road. I did not know I had killed him. I returned to the car. After some confusion, finally,

I drove to his house where I packed his things with my own, to give the impression I had left.''

After the homicide, appellant dragged the body of deceased into a field, a distance of about seventy-five feet and, placing it in an open furrow, partially covered it with two handfuls of dry grass. He then drove back to San Jose, went to the room of deceased, and took a suit of clothes, an overcoat, and blanket. His statements from the period when they left the park were partially corroborated by the physical condition of the body when found about a week after death, as well as by the blood stains upon the automobile. Mrs. Bunch testified that the next morning she found the room of deceased in great disorder, things all over the floor, dirty clothes in the middle, etc., and that a suit of his clothes were gone and a blanket.

About 2 o'clock Sunday morning a garageman in San Jose, who supplied appellant with two gallons of gas, testified that appellant was nervous and fidgety and aroused his suspicion but when he questioned him appellant merely stated that he was sleepy. The witness could not say that appellant was not under the influence of liquor.

About 6:15 appellant drove up to the farmhouse of Ed Smith, about four miles north of Salinas on the highway, his engine having stopped for want of water. His actions there were also peculiar. Mr. Smith testified that as appellant drove in, he kind of hit the gate; that after he had tried to fill appellant's radiator for him appellant persisted in attempting to crank the machine and kept talking to it and calling it some odd name; that they finally pushed the machine over toward the barn and as Mr. Smith walked out, he heard appellant playing the ukulele and singing; that when his wife asked him to have appellant come in for breakfast, he said: ''Let the boy go on. I do not think from his condition, I do not think he wants any breakfast.'' That appellant later attempted to give him seven cents, saying it was all the money he had; that appellant explained the blood spots on his shirt as the result of a fight with a Mexican in San Jose over a girl during a dance; that appellant then left after having a drink of water; that later the same morning he saw appellant in Salinas in a small Greek restaurant; that he asked appellant for his address so he could notify him what the garageman would charge to

fix his car; that appellant first gave him the name of "Fred Roland, New York City," and later the address of "2634 Thorpe Avenue, Los Angeles"; that appellant's breath was a little loud, or it might have been his side or hip or his clothes, as he considered him sober, but that he knew he could smell "jack" on him. Appellant testified that he adopted the name of Fred Roland while on the stage in New York and continuously thereafter used the same.

Assuming the evidence was sufficient to sustain the verdict against the attack that as a matter of law it is insufficient, still the cause must be reversed upon another ground.

In support of appellant's motion for a new trial there were offered and read in evidence four affidavits alleging misconduct on the part of Juror Ida M. Roberts, by reason of which a fair and due consideration of the case had been prevented and a verdict arrived at by means other than a fair expression of opinion on the part of impartial jurors. Before setting forth the contents of said affidavits, it should be noted that the case came on for trial September 14, 1926, on which day the entire jury was sworn. On the following day one of the twelve jurors was excused and another juror was selected to take her place, whereupon the entire jury was resworn. Some testimony was also taken on this day. On September 20th the taking of testimony was concluded and arguments for the prosecution and defense heard. On September 21st the district attorney made the closing argument for the prosecution and the jury was instructed and retired. Verdict was rendered on the same day.

The affidavit of O. B. Brott stated, in substance, that while driving his automobile in San Jose on September 12, 1926, Mrs. Finley, Mrs. Pratt, and Mrs. Roberts being with him as guests, said Mrs. Roberts stated in his presence and hearing, and that of said other persons, that she would hang anybody that would get drunk.

The affidavit of Mrs. Minnie Hussey stated, in substance, that on September 15, 1926, she met Mrs. Roberts and walked with her along South First Street in San Jose; that on that occasion said Mrs. Roberts stated to her that she had been called as a juror in this case and further stated: "Well, I have no use for anyone that drinks and I'd hang him."

The affidavit of Alice M. Pratt stated, in substance, that about September 13, 1926, after said Mrs. Roberts had been

summoned as one of the jurors in this case, but before her examination, said Mrs. Roberts was present at a ranch of affiant near San Martin; that she stated in the presence of affiant that she expected to be called on the jury and if so called she would hang him (referring to appellant); that affiant said, ''Oh! Ida, I will challenge you''; that said Ida M. Roberts answered, ''Just try it''; that thereafter on September 17, 1926, and while said Ida M. Roberts was a juror in the trial of said case, she held a conversation over the telephone with affiant and discussed therein the testimony of the witness Mrs. Bunch; that she related to affiant the testimony given by said witness and said: ''Poor little Andrew Pashuta was a fine boy; and it was a shame that this Galloway boy (meaning appellant) had taken him out and given him liquor and started him drinking when he never drank before''; that on Sunday evening, September 19, 1926, said Ida M. Roberts again had a telephone conversation with affiant, discussing therein appellant's testimony and stating that he was a nice appearing young man and was a nice, smooth talker and very calm, but that nevertheless he would hang; that on the evening of September 20, 1926, said· Ida M. Roberts had another telephone conversation with affiant in which she stated that the argument of the deputy district attorney was ''wonderful'' and ''masterful''; that appellant's attorney had made some weak sort of argument to try and save his client from the gallows, but she repeated and repeated that appellant would nevertheless hang; that on Sunday, September 19, 1926, affiant visited a ranch near Mountain View with said Ida M. Roberts and while there said Ida M. Roberts told affiant of the testimony of various witnesses during the trial and, pointing to an irrigation ditch, said: ''That is the kind of a ditch or furrow that the Galloway boy put little Andrew Pashuta in and put the grass over him''; that affiant remonstrated with said Ida M. Roberts on several occasions but said Ida M. Roberts only laughed and shrugged her shoulders and expressed her determination that appellant should hang; that on the evening of September 21, 1926, said Ida M. Roberts telephoned affiant that the case was over and the verdict was hanging, of course; that she further stated three of the jurors held out for a while but that ''we whipped them into line.''

The affidavit of Mrs. M. E. Finley stated that about September 15, 1926, affiant was present as a guest in the home of Mrs. Pratt in San Jose and while there said Ida M. Roberts stated in the presence and hearing of affiant and others that she expected to be selected as a juror to try said case and, if so, she would hang appellant.

The above affidavits were supplemented by the affidavit of S. F. Holstein stating that he was the only attorney for appellant and that he had no knowledge or information of any of the above set forth statements or conversations at any time until several days after the verdict of the jury had been returned.

In addition, there was introduced in evidence record of the *voir dire* examination of said Ida M. Roberts. Therein she stated that she knew nothing of the facts of the case except what she had read in the paper; that she had no opinion one way or the other as to the guilt or innocence of appellant; that she thought her mind was open and free for the reception of evidence and knew of no reason why she could not give appellant a fair and impartial trial upon all of the evidence had.

Thereupon there was filed on behalf of the prosecution counter-affidavit of said juror, Ida M. Roberts, specifically denying the numerous averments contained in the above-mentioned affidavits and alleging that the conversations referred to in the affidavit of Alice M. Pratt were initiated and solicited by said affiant Alice M. Pratt; that she, the said Ida M. Roberts, had no feeling or prejudice against appellant; that she was not influenced by any matter out of court but was guided and governed solely by the evidence of the witnesses and instructions of the court and rendered her verdict solely on such evidence and instructions and gave appellant a fair and impartial trial in all respects. But in her said affidavit, said juror, Ida M. Roberts, did admit the following: That on September 5, 1926, at the ranch-house of said Alice M. Pratt, near San Martin, and before affiant had been summoned or otherwise officially notified that her name had been drawn from the jury-box to serve on any venire in the trial of any case, and with no particular defendant, case, cause, or trial in mind, and in response to a question asked her by a member of the party, she replied that she would, if acting as a juror in a proper case,

vote for the death penalty. She further alleged in her said counter-affidavit that said Alice M. Pratt called her on the telephone repeatedly and persistently while she was acting as a juror; that said Alice M. Pratt asked her about the testimony of Mrs. Ida Bunch, to which affiant replied that Mrs. Ida Bunch had spoken clearly and distinctly, and nothing more; that on a later date in reply to a question asked her by said Alice M. Pratt, she stated "that defendant was a nice appearing boy; that he used good English, and that affiant wondered how he got his education," and nothing more; that on the following evening by means of the telephone, and in response to the question of said Alice M. Pratt, affiant stated that Mr. Frank Waterhouse had made a wonderful and masterful argument and that Mr. Holstein's argument was tiresome, or words to that effect.

On objection of the district attorney, the trial court struck out and refused to consider: (1) Statements set forth in said affidavits alleged to have been made by said juror prior to being sworn, and (2) statements contained therein alleged to have been made subsequent to rendition of verdict. The court refused to permit counsel for appellant to cross-examine said juror with reference to the matter set forth in her affidavit, or to permit him to present four additional affidavits, corroborating the statements contained in the affidavits previously read, in support of his motion for new trial upon the particular ground of misconduct of said juror, and denied said motion. Immediately thereafter counsel for appellant renewed his offer of said additional affidavits, asked to put said Ida M. Roberts on the stand for cross-examination, and stated that one of the additional affidavits was the affidavit of the husband of said affiant Alice M. Pratt, to the effect that said juror had asked him to call Mrs. Pratt to the telephone, thereby showing that said juror had initiated the conversations relative to said case; that another of said affidavits was that of the wife of said affiant O. B. Brott, corroborating her husband's statements. The court thereupon refused to reopen the matter or to permit said juror to be cross-examined or said additional affidavits to be filed.

Some confusion appears to have crept into our previous decisions respecting the proper interpretation of subdivision 3 of section 1181 of the Penal Code when read in connection

with sections 1066 and 1068 thereof. Under the two last-mentioned sections, a challenge of a juror for actual bias is allowed, but it must be taken before the juror is sworn, or, at the latest, after he is sworn but before the jury is completed. Under the first above-mentioned section, however, the language of the statute is to the effect that the court may grant a new trial when the jury has "been guilty of any misconduct by which a fair and due consideration of the case has been prevented."

In *People* v. *Plummer,* 9 Cal. 298, discussing section 440 of the Criminal Practice Act, which is practically the same as subdivision 3 of section 1181 above mentioned, the court held that where a juror made statements previous to the trial showing actual bias, which rendered him incompetent to try the case, and where a verdict of guilty was found by such juror, a new trial should be granted. In that case it appeared that each of the two jurors in question had answered "satisfactorily" on his *voir dire.*

Discussing this same section of the Criminal Practice Act, this court in *People* v. *Fair,* 43 Cal. 137, 147, expressly overruled the case of *People* v. *Plummer, supra,* and held that failure to challenge for actual bias before a juror was sworn foreclosed any inquiry as to that juror's state of mind, for the reason that under said section the existence of actual bias on the part of a juror prior to the time he was actually sworn had not been enumerated as a ground of motion for new trial and, not having been specifically so enumerated, it was in effect expressly excluded and could not be invoked. Relying exclusively upon *People* v. *Fair, supra,* two later cases have been found, as follows: *People* v. *Mortimer,* 46 Cal. 114, and *People* v. *Samsels,* 66 Cal. 99 [4 Pac. 1061].

This situation remained until the case of *People* v. *Emmons,* 7 Cal. App. 685, 702 [95 Pac. 1032, 1039], where the doctrine in the case of *People* v. *Fair, supra,* was alluded to, but apparently weakened by reference thereto as follows: "We must infer, of course, in support of the action of the court, that appellant knew at the time he examined the juror Johnson of what he proposed to show by the witness Kelly, and that by his failure to present the facts before the trial he waived them." So the latest expression of the

court upon this subject throws doubt upon the rule an-
nounced in *People* v. *Fair, supra.*

[1]   We think that *People* v. *Fair, supra,* omits the recog-
nition of a well-defined distinction which exists between a
case where a juror was not interrogated upon the subject,
or where he admitted his bias and expressed the belief that
he could lay it aside, and a case where a juror concealed his
prejudiced state of mind when examined on his *voir dire*
and entered upon the discharge of his duty as such juror
while in such mental condition. In the second instance,
actual bias becomes, where concealed, positive misconduct
and continues to be such throughout such juror's service on
the case, and if such misconduct is not known to the accused
until after the trial and verdict, we see no reason whatso-
ever why the court should not have power to grant to the
accused a new trial, basing it upon said subdivision 3 of
section 1181 of the Penal Code. To use as an illustration an
extreme situation: Suppose a juror had been actually cor-
rupted; had corruptly agreed to vote for a verdict of guilty
regardless of the evidence; had concealed this fact on his
*voir dire* examination and had served as a juror, the facts
respecting the situation being unknown to the accused dur-
ing the trial and only discovered after verdict. Can it be
said for a moment that a trial court would be without power
to grant a new trial?

[2]   We agree with the language of *People* v. *Turner,*
39 Cal. 370, 371: ''After an issue of fact is joined in a
criminal case, every step thereafter taken for the purpose
of a determination of that issue, in the court where the
cause is pending, up to and including the verdict upon
such issue, must be regarded as a step or proceeding 'aris-
ing during the course of the trial,' within the meaning of
section 440 of our criminal practice act; hence, any sub-
stantial error of the court upon any matter or question
intervening between the joining of issue of fact and the
rendition of a verdict thereon, and any misconduct of a
juror, who participates in the verdict, from the time he
is called in the case and sworn and examined on his *voir
dire* up to the final act of rendering the verdict, is proper
ground for a motion for a new trial under said section, and
on appeal from an order of the court denying or granting
such motion, based upon such grounds, the appellate court

is confined to a review of the proceedings within these limits." To the same effect, see *People* v. *White,* 5 Cal. App. 340 [90 Pac. 471].

Or, as said in *Green* v. *Duvergey,* 146 Cal. 379, 385 [80 Pac. 234] : "The trial of a cause includes all the rulings of the court and the proceedings before it which conduce to the decision which it makes upon the issues in the case as the basis of its judgment." (See, also, *Stow* v. *Superior Court,* 178 Cal. 140, 143 [172 Pac. 598].)

[3] We think the proper rule is this: That under section 1181, subdivision 3, it is within the power of the trial court to grant to an accused a new trial because of misconduct of a juror whether such misconduct consists of failure to disclose a prejudicial mind at the time he is sworn or whether such misconduct arises after he is sworn as a member of the trial jury, subject, of course, to the qualification that such misconduct will not be considered sufficient where the accused has failed to exercise diligence in the premises or has knowledge prior to the verdict of such misconduct; nor will it avail an accused when, from a consideration of the whole case, it can be seen that he has suffered no injury therefrom. In other words, a safe rule applicable to the situation would be that the court would not be warranted in setting aside a verdict on account of such misconduct unless from a review of the entire case it can be seen that the accused has not only been diligent but has suffered an injustice by reason of the action of such juror.

[4] "The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to trial by jury guaranteed by the Constitution. Upon this proposition all the authorities agree." (*Lombardi* v. *California Street Ry. Co.,* 124 Cal. 311, 317 [57 Pac. 66, 68] ; see, also, *Sherwin* v. *Southern Pacific Co.,* 168 Cal. 722 [145 Pac. 92].)

The holding announced above is in harmony with the declarations of practically all the text-writers. Mr. Wharton, in Criminal Pleading and Practice, ninth edition, page 605, section 844, states the rule in the following language : "When it appears after trial that a juror had beforehand prejudiced the case, but had improperly withheld this fact before acceptance, or when asked as to opinion on *voir dire* had given false answers, and such formation of opinion was

unknown to the party at the time, a new trial will be granted.''

[5] ''Where a juror has prejudged defendant's guilt before hearing the sworn testimony, it cannot be said that defendant has had a fair trial before an impartial jury, and a new trial will be granted. Usually this ground is established by proof of prior statements of the juror concerning the case, bias being deemed to be established where the juror's declaration, on his *voir dire*, that he was not biased, is negatived by proof of prior statements of such a character as to show a fixed opinion on the part of the juror, and which, if unknown to defendant until after verdict, will call for a new trial.'' (16 Corpus Juris, Criminal Law, p. 1154.)

''But, if through undiscoverable and unknown wrong, the defendant has been tried and convicted by a panel containing an unfit juror, the evidence of which must be very distinct where the verdict is right, a new trial will be granted.'' (Bishop's New Criminal Procedure, sec. 949 b–2.)

And, as far as we can ascertain, the decisions of practically all the states are to the same effect. Cases in states having statutes identical with our own sustaining the conclusion herein announced are *State* v. *Mott,* 29 Mont. 292 [74 Pac. 728], and *State* v. *Morgan,* 23 Utah, 212 [64 Pac. 356]. Under a similar statute see *State* v. *Swafford,* 88 Wash. 659 [153 Pac. 1056].

Then, too, our constitution, section 7 of article I, provides: ''The right of trial by jury shall be secured to all and remain inviolate.'' A defendant is entitled to a speedy public trial by an impartial jury and we think this right is denied him where there are upon the panel one or more jurors who have actual bias against the prisoner and have concealed or withheld the fact on their *voir dire*. In such case the jury is not *omni. majores exceptione.*

In *Sherwin* v. *Southern Pacific Co., supra,* a civil case, this court directly intimated that false statements made by a juror on his *voir dire* examination furnish a sufficient ground for granting of a new trial, saying: ''It may be conceded that the conduct of the juror Horton in giving a false answer to the questions put to him constituted misconduct or irregularity on his part sufficient to warrant a new trial

therefor.    (See Hayne on New Trial and Appeal, rev. ed., sec. 45.)''

Hayne on New Trial and Appeal, volume 1, page 226, states the rule as follows: ''Sec. 45.    If a Juror be Examined as to his Qualifications and He does not Answer Truly, a New Trial will be Granted.—Where the party has examined the jurors concerning their qualifications, and they do not answer truly, it is manifest that he is deprived of his right of challenge for cause, and is deceived into foregoing his right of peremptory challenge.    If on ascertaining the truth he were not allowed to present the matter on motion for new trial, the grossest injustice might be done.    The employees or partisans of one party could, by perjury, get on the jury and decide the case for him, or prevent an agreement against him, and no relief could be obtained. This would be contrary to the first principles of justice. And accordingly in most states, the fact that a juror answered falsely as to his qualifications is a recognized ground for a new trial.''

Shall a new trial in a civil case be more easily obtained than in a case where life or liberty is involved?    It follows that in this case the court should have considered the affidavits tendered not only as to the conduct of the juror after being sworn, but also as to her conduct prior thereto, especially her conduct after she was summoned to serve as a member of the panel.

[6]    Again, the court, after instructing the jury on the subject of intoxication, ended his charge upon that subject with the following language: ''Evidence of drunkenness in murder cases can only be considered by the jury for the purpose of determining the degree of crime, and for that purpose it must be received with great caution.''    Section 19 of article VI of the constitution provides that the courts ''shall not charge juries with respect to matters of fact.'' The identical instruction here under consideration was before the court in *People* v. *Nihell,* 144 Cal. 203 [77 Pac. 916], where the court said: ''We know of no rule of law, which in view of our constitutional provision as to charging juries upon matters of fact, justifies the giving of such instructions but we cannot see that the giving of the same could have affected the substantial rights of the defendant.''

In the case at bar the actual intoxication of the defendant seems practically certain and up to and within an hour of the time of the tragedy is practically conceded. It rests not upon the testimony of the defendant alone but upon the testimony of disinterested witnesses. This, too, was practically his sole claim for a reduction of the degree of crime. The above instruction, therefore, should not have been given.

We deem it unnecessary to discuss any of the further points made by appellant as none of them are likely to arise upon a new trial of the cause.

Judgment reversed.

Richards, J., Shenk, J., Langdon, J., and Waste, C. J., concurred.