SAM W. TAYLOR, Judge.
Rudolph John Pennucei was convicted of murdering JoAnn Richards, his ex-wife, and was sentenced to life imprisonment. The evidence was that on March 22, 1982, the appellant entered the Delchamps Food Store at K-Mart Plaza, Highway 90 in Mobile, where his ex-wife was a cashier. He shot her in the back, she fell to the floor and he shot her four more times. Four of the wounds were close together in the upper right chest area. He reloaded his pistol, exited the store and stood at the corner of the building holding police and others at bay for about four hours. Appellant’s sister, a police negotiating team, and a priest all talked with him from a hundred-foot distance. Finally, he fired the pistol, creasing the top of his own head.
As part of the jury selection process, which was very lengthy because of full media coverage of the events, the court, pursuant to appellant’s request, asked:
“THE COURT: Now ladies and gentlemen of the jury, these are a list of witnesses that might be called for the Defendant: Yince Gomez; Jim Brusni-ghan; Shirley Knight; Chester Horn-buckel; Tina Bean; Billy Bean; Clyde Van Rosen; Gary P. Alidor; is that the attorney?
“MR. BANKS: Yes, sir.
“THE COURT: Jane Renick; Peader Dalton; F.D. Sims. Now, are any of you personally acquainted with or friends of any of these people?
“(No response)”
A jury was then selected.
After sentence, it was discovered that a juror had previously had dealings with "witness, Clyde Van Rosen. Appellant moved for a new trial, citing the failure of the prospective juror to answer truthfully the questions in the voir dire examination. The parties stipulated as follows:
“MR. BANKS: It is stipulated between the State and the defense that Clyde Van Rosen would testify to the effect that he was a witness in the trial of Rudolph John Pennucei. Further, that he knew Mr. Wendil E. Carney, juror number 27, on Panel 3. His' association with Mr. Carney was the result of his having evaluated Mr. Carney in connection with a child custody matter in which Mr. Carney did not get custody of the child involved. And further that Mr. Carney owes money on Dr. Rosen’s account.
The motion for new trial was denied.
Appellant contends the court erred in denying the motion for new trial based on the failure of a juror to answer a question proponded to that juror on voir dire examination.
Dr. Van Rosen, a clinical psychologist testified as an expert on behalf of the defendant on the defense of insanity. He testified that he examined the appellant one time, the Saturday before trial in November, 1982, for several hours. He said that on March 27, 1982, the appellant had: a major depressive episode, was abusing alcohol, and also had a drug dependence. He later stated that:
“A Well, I think that in regards to his actions on — I don’t know the exact date of the day of the shooting. I think he was going to do this and he was more or less powerless to stop this. He was going to shoot his wife or his ex-wife and he didn’t care about the consequences. He was powerless to resist.
“Q Powerless?
“A I think so.”
Dr. Van Rosen testified he did not think the appellant was a psychotic.
Other witnesses were called by the appellant, including his divorce lawyer, another person who had known him for 22 years, a priest, his sister, a manager from his employer’s, a psychiatrist’s nurse, and appellant’s nephew. All were asked questions pointing to appellant’s mental condition or actions reflecting his mental condition. Some were asked specifically about bizarre behavior and evidence was adduced that appellant apparently had made several attempts at suicide.
*18 The principle of law governing this situation is set out by Chief Justice Torbert in Martin v. Mansell, 357 So.2d 964, 967 Ala. 1978, where he stated:
“We agree with the Martins that counsel and parties are entitled to true and honest answers from prospective jurors to enable them to exercise their discretion wisely in the use of peremptory strikes and that when jurors fail to answer questions correctly, counsel and parties are denied the exercise of that right. Sanders v. Scarvey, 284 Ala. 215, 224 So.2d 247 (1969); Morris v. Zac Smith Stationery Company, 274 Ala. 467, 149 So.2d 810 (1963); Leach v. State, 31 Ala.App. 390, 18 So.2d 285, cert. denied, 245 Ala. 539, 18 So.2d 289 (1944).
“In Freeman v. Hall, 286 Ala. 161, 166-67, 238 So.2d 330, 335-36 (1970), this court stated the following:
‘Neither Sanders v. Scarvey, Leach, nor the original opinion in the instant case, is authority for the proposition that on voir dire any failure of any prospective juror to respond properly to any question regardless of the excuse or circumstances automatically entitled a party to a new trial or reversal of the cause on appeal.
‘We hold that the proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in probable prejudice to the movant.’ ”
This principle has been reaffirmed in Ex Parte Ledbetter, 404 So.2d 731 (1981). Mr. Justice Beatty quoted with approval the following at page 733:
“‘Where the party has examined the jurors concerning their qualifications, and they do not answer truly, it is manifest that he is deprived of his right of challenge for cause, and is deceived into foregoing his right of peremptory challenge. * * * And accordingly, in most States the fact that a juror answered falsely as to his qualifications is a recognized ground for a new trial’ (Hayne on New Trial & Appeal, p. 143, Section 45) — we would say, of course, where there was probable prejudice to the defendant by such juror’s conduct. See also People v. Galloway, 202 Cal. 81 259 P. 332; Williams v. Bridges, 140 Cal.App. 537, 35 P.2d 407; Hyman v. Eanies, C.C. [Colo.], 41 F. 676; Ippolito v. United States, 6 Cir. [Ohio], 108 F.2d 668.”
In this instant the juror received a brief evaluation from the clinical psychologist, Dr. Rosen. Dr. Rosen testified that in addition to his private practice, he had a full-time job as administrator of the in-patient Mental Health Center of the U.S.A. Medical Center. Also, that he was in charge of the jail consultation programs with the Mobile city and county jails. Additionally that he testified on “probably 99 percent of all commitment cases in Mobile County and that has probably been close to fifteen hundred since I’ve been here.” [RR-131]
Going back, the question asked was, “Now, are any of you personally acquainted with or friends of ...” listed witnesses.
In all likelihood, the prospective juror did not consider himself to be “personally acquainted with” or “friends of” Dr. Rosen. We conclude that the prospective juror correctly answered the question to himself, and correctly did not respond. There is, then no concealment. The jury had before it a great deal of testimony from which to make its determination on the plea of not guilty by reason of mental disease or defect. Dr. Rosen’s testimony was “iffy” at best. Twice he said in the same sentence that the appellant had made up his mind to do the murder, but then could not stop himself.
The prospective juror was seen by a very busy clinical psychologist in connection with a divorce in which the wife got custody of the children — an unremarkable result. We note that as a divorced man whose ex-wife had child custody, his situation in life would tend to make him more sympathetic to the appellant than otherwise, and more likely to be struck by the state than the defense.
This is a close case factually. We conclude, that, applying the principles referred to herein, there was no concealment, inten *19 tional or unintentional. Thus, there is no basis for this appeal and the judgment is due to be affirmed.
AFFIRMED.
All the Judges concur.